## EARL BONHOTEL *v.* NANCY BONHOTEL
### (AC 20526)

Lavery, C. J., and Landau and Pellegrino, Js.

---

Argued November 30, 2000—officially released July 31, 2001

*Eugene P. Falco*, for the appellant (defendant).

*Steven H. Levy*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, Nancy Bonhotel, appeals from the trial court's judgment denying the defendant's postdissolution motion.[1] On appeal, the defendant claims that the court improperly (1) determined that the plaintiff, Earl Bonhotel, was not responsible for certain expenses related to the postmajority education of the parties' children, including room and board when college sponsored housing was unavailable, and he had not been consulted about the children's education,[2] (2)

---

[1] The defendant's motion was titled motion for contempt or order postjudgment.

[2] The court heard evidence on the issue of prior consultation and found that the plaintiff had not been consulted in accordance with the separation agreement. Both parties addressed the correctness of the court's finding; neither party argues on appeal that the court improperly considered the question of prior consultation in construing the separation agreement. Prior consultation is a condition precedent to the plaintiff's paying for his sons' education.

Although the court found that the plaintiff had not been consulted about

applied the best interest of the child standard to the question of postmajority education and (3) denied the defendant's request for attorney's fees. We affirm in part and reverse in part the judgment of the trial court.

The following facts are necessary for our resolution of this appeal. The court, *Pickett, J.*, incorporated the parties' separation agreement into its 1991 judgment dissolving the parties' marriage. According to the separation agreement, the plaintiff is required to pay the tuition and room and board expenses of any college the parties' children choose to attend. The parties have three sons.

In November, 1999, the defendant filed a postjudgment motion seeking, in part, an order that the plaintiff pay the costs associated with the postmajority education of the parties' eldest son, James, who was twenty-one years old at the time, and their youngest son, Benjamin, who was almost eighteen years old.[3] The plaintiff refuses to pay any additional postmajority educational expenses for James and the cost of room and board and his share of other college related expenses for Benjamin. The plaintiff is unwilling to pay Benjamin's room and board expenses because Benjamin planned to live with the defendant while he attended a state university that did not provide residential facilities for students. The plaintiff refuses to pay the cost of tuition, room and board and related educational expenses for

the colleges that Benjamin and James would attend, the plaintiff did not claim at the hearing, or in his brief to this court, that the lack of consultation was the reason he had refused to pay for certain college related expenses of the parties' sons. Indeed, the plaintiff agreed to pay Benjamin's tuition. The plaintiff refused to pay any college related expenses for James because James had not completed prior educational endeavors he had undertaken. We therefore decline to review this claim.

[3] The defendant titled her motion a motion for contempt or order. The defendant, however, did not ask the court to find the plaintiff in contempt but to order the plaintiff to do certain things pursuant to the judgment of dissolution. The court treated the motion as a motion to compel.

James due to his son's failure to complete prior educational endeavors for which the plaintiff had paid. More specifically, the plaintiff refuses to pay additional post-majority educational expenses for James because James dropped out of military school when he was thirteen years old and withdrew from Northwestern Connecticut Community-Technical College during his first semester of enrollment. At the time of the hearing, James, who had obtained a graduate equivalency diploma, was homeless and unemployed.

The court denied the postjudgment motion, in part, as it pertained to the plaintiff's paying for (1) costs related to James' postmajority education, (2) the cost of room and board for Benjamin that is not incurred by his living in college sponsored housing and (3) the attorney's fees of the defendant. The court granted the defendant's motion ordering the plaintiff to share equally with the defendant the cost of Benjamin's books, laboratory and other fees imposed by the college as a consequence of Benjamin's being enrolled or taking particular courses, and other fees ordinarily imposed on all students at the institution.[4] The defendant appealed.

By her postjudgment motion, the defendant asked the court to interpret the separation agreement as it was incorporated into the parties' judgment of dissolution. "A judgment rendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract. . . . Accordingly, [o]ur resolution of [a party's claims] is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circum-

---

[4] The plaintiff did not appeal from the court's judgment ordering him to share the cost of certain of Benjamin's college related expenses or from other orders not related to the defendant's appeal.

stances connected with the transaction." (Citations omitted; internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999).

"When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . . Practice Book § 4061 [now § 60-5]. . . . Under the circumstances of this case, because the trial court relied solely upon the written [agreement] in ascertaining the intent of the parties, the legal inferences properly to be drawn from the [document is a question] of law . . . . In short, our resolution of the present appeal does not call upon us to go outside the four corners of the agreement, the language of which is clear and unambiguous. Accordingly, our standard of review is plenary." (Citations omitted; internal quotation marks omitted.) *Issler* v. *Issler*, supra, 250 Conn. 236.

I

The defendant first claims that the court improperly determined that the plaintiff is not responsible for the cost of Benjamin's room and board while he attends a college that does not provide student housing. We agree.

Benjamin planned to enroll at Louisiana State University at Alexandria, an institution of higher education that does not provide residential facilities for its students. Benjamin therefore intended to reside with the defendant. The relevant provision of the separation agreement provides that the plaintiff "agrees to pay . . . the room and board of any private schools or undergraduate colleges the parties' children choose to attend . . . ." The court denied the defendant's motion seeking an order that the plaintiff pay the cost of Benjamin's living in the defendant's home by distinguishing the language of the separation agreement here from the language of the separation agreement in *Legg* v. *Legg*,

44 Conn. App. 303, 688 A.2d 1354 (1997).[5] Here, the court concluded that the language of the parties' separation agreement "unambiguously expresses the clear intent that. the room and board expenses would cover expenses imposed by a private school or undergraduate college, as [opposed] to expenses [of] living at home." We disagree.

"An agreement between divorced parties regarding the postsecondary education of their children that is incorporated into a dissolution decree should be regarded as a contract. *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990). In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Legg* v. *Legg*, supra, 44 Conn. App. 306.

We conclude from our construction of their separation agreement that the parties here intended, except under certain circumstances,[6] that the plaintiff would pay the cost of tuition and room and board associated

[5] In *Legg*, the parties' son enrolled in Quinnipiac College in the fall of 1994 and lived at home with his mother to reduce expenses. The father refused to pay the cost of his son's living expenses because the young man was living at home rather than on campus. *Legg* v. *Legg*, supra, 44 Conn. App. 305–306.

[6] The limiting circumstances are related to an index of the defendant's income.

with his sons' college educations. Article ten of the parties' separation agreement is titled "child support and education of the children." The fourth, fifth and sixth paragraphs of article ten concern the responsibilities of the parties for their sons' educations. Paragraph four provides that the plaintiff "agrees to pay the tuition of any private schools or undergraduate colleges the parties' children choose to attend. [The plaintiff] shall be consulted prior to the decision of such school or college. (Such schools to include any undergraduate private schools.)" The next paragraph provides in relevant part that the plaintiff "also agrees to pay fully the room and board of any private schools or undergraduate colleges the parties' children choose to attend so long as [the defendant's] income is below the 'Index' set forth below." The final paragraph provides that "[t]he parties shall share equally all other related expenses pertaining to the children's private school or undergraduate educations over and above tuition and room and board."

This court's reasoning in *Legg* concerning the expenses of room and board applies to the facts here as well. The circumstances in both cases indicate that when they were divorcing, the parents recognized the importance of a college education for the children and agreed to provide some manner of financial assistance in that regard. In *Legg* we stated: "The stipulation of the parties made clear their intention to pay for the room and board of their children when they attended college. These items have a dollar value, whether incurred on or off campus, and each party agreed to pay one half of that value. Nowhere in the agreement is there a specification that requires the child to live on campus for the parents to be responsible for room and board expenses. The defendant could have incorporated such a specification into the stipulation had he wanted, but he did not. If the son had lived on campus,

the evidence indicated that the father's share of room and board would greatly exceed $750." Id., 307.

Here, the parties agreed that the plaintiff would pay the cost of room and board associated with their children's college education. They could have specified that their sons had to live in college sponsored housing for the plaintiff to be responsible for room and board, but they did not do so. Pursuant to the separation agreement, the plaintiff agreed to give his children the freedom to attend the college of their choice. In the face of such an agreement, the plaintiff cannot now say that he will not pay the cost of room and board for Benjamin because the young man has elected to attend a state university that does not provide student housing. The court therefore improperly denied the defendant's motion, and we reverse that portion of the court's judgment. On remand, the court must hear evidence to determine the costs of Benjamin's room and board in the defendant's home or wherever he may reside while he is enrolled at college.

II

The defendant's second claim is that the court improperly applied the best interest of the child standard to the issue of postmajority education. We agree.

The following additional facts are necessary for our resolution of this claim. During the hearing on the defendant's postjudgment motion, the court heard testimony from both the plaintiff and James. In its memorandum of decision, the court stated: "The plaintiff testified, and the court finds this testimony persuasive, that if James does not have to contribute to the cost of his education, he will probably again not follow through and complete his education. James himself testified that he wants to attend college again, but could not finance college on his own unless he attended only part-time or during evenings so that he can get a job to pay for

his education expenses. Despite this, however, James testified that he wanted to pay for his tuition himself and did not want his father to be ordered by the court to pay tuition. James also stated that he thought he would complete his education if he had to pay for it himself and thought he might respect himself more if he had to pay for it himself. From this evidence, the court finds persuasive the plaintiff's testimony that it is James' best interest if the plaintiff does not pay for tuition for James.

"In this context, where the court has found it not to be in James' best interest for the plaintiff to pay for James' tuition, the court must now rule on the defendant's request that the plaintiff be ordered to do so." Thereafter, the court construed the parties' separation agreement, applying the law of contracts. The court concluded that "the plaintiff fulfilled the reasonable and foreseeable obligations imposed on him by the separation agreement and intended by the parties in this regard when he paid for tuition and college expenses for James when he last attended [Northwestern Connecticut Community-Technical College]."[7] Immediately following that conclusion, the court stated: "In considering this matter, moreover, the Superior Court sits as a court of equity. . . . *Based on the court's finding of James' best interest,* the court holds it would be inequitable to require the father to pay for tuition that would not benefit his son." (Emphasis added.)

On appeal, the defendant claims that the best interest of the child standard does not apply to postmajority educational issues and that the court improperly failed to base its ruling on the separation agreement. We agree with the plaintiff that the best interest of the child standard has no application to postmajority educational issues.

---

[7] The court made no findings concerning what the parties intended to be reasonable obligations.

The plaintiff argues, without citation or analysis, that the court's "finding" as to James' best interest was a "finding of fact and not the holding of the trial court." Although the memorandum of decision is not a model of clarity, it is clear to this court that the trial court based its conclusions concerning the plaintiff's contractual obligations, in part, on its own belief of what is best for James.

At the time of the hearing, James was twenty-one years old. General Statutes § 1-1d provides that "any person eighteen years of age or older shall be an adult for all purposes whatsoever and have the same legal capacity, rights, powers, privileges, duties, liabilities and responsibilities as persons heretofore had at twenty-one years of age, and 'age of majority' shall be deemed to be eighteen years." We have not been able to find any case law or other authority in which a court has determined the legal rights of an adult or one who has reached the age of majority by the "best interest of the child" standard. Our statutes, in fact, are to the contrary.

The jurisdiction of the court to enter an order concerning the education of a child beyond the age of eighteen is permitted exclusively by statute. General Statutes § 46b-66 provides in relevant part that "[i]f the [separation] agreement is in writing and provides for the . . . education . . . of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree . . . . "

Whether the plaintiff or the court believes James may be better served by an alternate strategy for funding his education, the separation agreement, enforceable pursuant to § 46b-66 and not modifiable except by written agreement of the parties, is determinative of the

plaintiff's obligation to pay for James' education. The agreement is a contract and must be interpreted by our laws pertaining to the construction of a contract. To that end, the court also made findings of fact with respect to the separation agreement.

In addition to the best interest standard, the court found, with regard to the separation agreement, that the plaintiff had not been consulted about James' education after he left Northwestern Connecticut Community-Technical College. The court also determined that the plaintiff had fulfilled his obligation to James by paying his son's tuition for one semester at the community college. On the basis of our review of the record, however, there was no evidence before the court to make such a finding. Although the court concluded that the plaintiff had fulfilled the reasonable and foreseeable obligations imposed on him by the separation agreement, the record is void of any evidence as to the intention of the parties as to what they considered reasonable obligations at the time they entered into the separation agreement. See *Sablosky* v. *Sablosky*, 61 Conn. App. 66, 71, 762 A.2d 922 (2000) (" 'well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts' ").

Because the court improperly applied the best interest standard to the issue of James' postmajority education and found the reasonable obligations of the plaintiff in the absence of evidence to support its finding, we reverse that portion of the judgment and remand the case for further proceedings to ascertain, in part, the parties' intent at the time they entered into the separation agreement regarding the extent to which they reasonably expected to provide for their children's postmajority education, e.g., the equivalent of eight full-

time semesters of study at the colleges of their sons' choice.

## III

The defendant's third claim is that the court improperly denied her request for attorney's fees. We disagree.

In her postjudgment motion, the defendant requested that the plaintiff be ordered to pay Benjamin's and James' college expenses, among other things, and to pay for the expenses of the motion, including attorney's fees and her travel expenses. Although the defendant titled her motion one for contempt, she did not request that the plaintiff be found in contempt. The court did not find the plaintiff to be in contempt, but it did order the plaintiff to do certain things pursuant to the parties' separation agreement, which was incorporated in the judgment of dissolution.

Ordinarily, courts in this country do not award attorney's fees to the prevailing party unless there is a prior agreement between the parties or the payment of such fees is provided for by statute. *Raph v. Vogeler*, 45 Conn. App. 56, 65, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997). General Statutes § 46b-87[8] provides that the court may award attorney's fees to the prevailing party in a contempt proceeding.[9] Because the defen-

---

[8] General Statutes § 46b-87 provides: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt, provided if any such person is found not to be in contempt of such order, the court may award a reasonable attorney's fee to such person. The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with such an order shall be paid by the state as in criminal cases."

[9] We note that the court's memorandum of decision refers to General Statutes § 46b-82, which deals with alimony orders. That reference is obviously a scrivener's error.

dant did not ask that the plaintiff be found in contempt and he was not found to be in contempt and because certain of the items for which the defendant sought reimbursement are not included in the statute, the court properly denied the defendant's request for attorney's fees and other expenses related to the prosecution of her postjudgment motion. The portion of the court's judgment related to attorney's fees therefore is affirmed.

The judgment is reversed only on the issues of room and board for the parties' youngest son and tuition and other expenses for the parties' oldest son and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.