STEVEN BERGLASS *v.* ABIGAIL BERGLASS
(AC 20087)

Mihalakos, Dranginis and Callahan, Js.

Argued September 28, 2001—officially released August 27, 2002

*Wesley W. Horton,* with whom were *Robert M. Shields, Jr.,* and, on the brief, *Lori Welch-Rubin,* for the appellant (plaintiff).

*Penn Rhodeen,* for the appellee (defendant).

*Opinion*

DRANGINIS, J. The plaintiff, Steven Berglass, appeals from the trial court's postjudgment orders rendered in this marriage dissolution action. On appeal, the plaintiff claims that the court (1) improperly modified the parties' parenting plan by (a) ordering overnight visitation, (b) increasing evening visitation, (c) limiting the time period for the defendant to be drug tested and (d) eliminating the requirement that the parties submit to mediation prior to modification; (2) abused its discretion in denying his motion for authorization to obtain the defendant's medical records; and (3) abused its discre-

tion in awarding the defendant attorney's fees.[1] We affirm, in part, and reverse, in part, the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff and the defendant, Abigail Berglass, were married on July 6, 1984. During their marriage, the parties had two children, Jacqueline,[2] born in 1987, and Laura, born in 1993. On November 19, 1996, the parties sought dissolution of their marriage, and on August 12, 1998, the court rendered a judgment of dissolution. A stipulated parenting agreement addressing custody and visitation was incorporated into the dissolution judgment. Pursuant to that agreement, the parties maintained joint legal custody of the children, with primary physical custody with the plaintiff. Despite the fact that judgment was rendered

---

[1] In his statement of the issues on appeal, the plaintiff sets out his claims in relevant part as follows: Whether the court improperly (1) "fail[ed] to hold an evidentiary hearing prior to modifying upward the defendant mother's visitation with the minor child Laura and modif[ied] the condition precedent to such visitation of weekly random substance abuse screenings by imposing a six month time limitation on any further testing requirement? (2) . . . modif[ied] the visitation schedule and modif[ied] the condition precedent to such visitation of weekly random substance abuse screenings by imposing a six month time limitation on any further testing requirement when the only relevant motions pending before the court alleged contempt of the original visitation agreement? (3) . . . modif[ied] the original visitation agreement, both as to the amount of visitation and as to the time limitation imposed on the weekly substance abuse testing as a condition precedent to such visitation, without finding that a material change in circumstances had occurred or that the order sought to be modified was not in the best interests of the minor child? (4) . . . relabeled the increased visitation as 'compensatory time?' (5) . . . modif[ied] the original visitation agreement when it failed to satisfy the contractual condition precedent to such revision or modification, that is that the parents affirmatively submit to mediation prior to court intervention? (6) . . . abuse[d] its discretion when it denied the plaintiff's motion to obtain the defendant mother's medical records? [and] (7) . . . abuse[d] its discretion in awarding the defendant mother attorney's fees?"

[2] Jacqueline is not interested in visiting with the defendant, nor is her visitation with the defendant an issue in this appeal.

on the basis of the parties' stipulation, this case has all the indicia of a so-called "high conflict" custody case.

The action was filed in late 1996, and in that year, twenty motions were filed. In 1997, there were forty-four docket entries, including two notices of appeal, a family division report and a motion for a mental and physical examination. In 1998, *eighty* docket entries are noted prior to judgment, including a second report of the family division and one appeal to the Appellate Court. During the postjudgment years of 1998 and 1999, there are forty-six entries, including a third family division report and this appeal.

At the time of the dissolution, the parties took into consideration the defendant's substance abuse problem in drafting their parenting agreement. It provided in relevant part that her visitation with Laura "is at all times premised on the mother's continued successful recovery, continued weekly random toxicology test, continued therapy, and continued monthly sessions with Laura and Connie Catrone, [a social worker]." It further provided that "Catrone shall be consulted before visitation between Laura and the mother is expanded beyond the terms of this agreement." More specifically, the agreement provided that initially, the defendant would have visitation with Laura on Saturdays from 10 a.m. to 5 p.m. "Beginning December 4, 1998, after consideration and approval of Connie Catrone, with continued verification of the mother's recovery, Laura will spend overnights with her mother each week from Saturday overnight to Sunday."

The plaintiff, however, would not permit Saturday overnight visitation with the defendant. Consequently, on December 16, 1998, the defendant filed a motion for contempt. Laura's guardian ad litem filed a similar motion. Thereafter, the plaintiff filed an objection, claiming that the condition precedent to such visitation,

namely, confirmation of the defendant's successful sobriety, had not been satisfied. With respect to overnight visitation, the court ordered that the defendant have visitation from Saturday at 10 a.m. until Sunday at 10 a.m. every weekend. Additionally, the court increased Monday, Wednesday and Friday evening visitation with the defendant and limited the time period during which the defendant would be subject to weekly substance abuse testing to a period of six months. This appeal followed. Additional facts will be set forth as necessary to resolve the issues presented.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 9–10, 787 A.2d 50 (2001).

I

The plaintiff's first four claims involve whether certain orders by the court constituted improper modifica-

tions of the parties' parenting agreement. We will address each of the claims in turn.

## A

The plaintiff first claims that the court's overnight visitation order was an improper modification of the parties' agreement. Specifically, the plaintiff argues that the court failed to conduct an evidentiary hearing before ordering overnight visitation, thereby denying him due process.[3] We do not agree.

The following additional facts are relevant to our resolution of the plaintiff's claim. At the September 14, 1999 hearing, in response to the December 16, 1998 motion for contempt, the defendant's counsel asserted that the defendant had complied with the conditions precedent to overnight visitation. Specifically, she claimed that she had submitted to drug testing by Jerome Schnitt, a physician previously chosen by the plaintiff, and that those tests were negative for substance abuse. The plaintiff, however, argued that the testing was insufficient because it could not or did not test for Ambien, and did not test for Soma and alcohol, drugs that the defendant had admitted to abusing in the past.[4] The plaintiff also claimed that the test samples were diluted and that tests were not conducted or reported on a weekly basis. He therefore argued that overnight visitation should not occur because the defendant had failed to comply with the condition precedent to overnight visitation pursuant to the parenting plan.

---

[3] Because we conclude that the court-ordered overnight visitation was an enforcement of the original judgment rather than a modification of it, we need not consider the plaintiff's additional arguments that (1) there was no motion to modify overnight visitation before the court, (2) the court made no finding of material change in circumstances and (2) the court did not consider the best interest of the child in deciding to order overnight visitation.

[4] Schnitt's alcohol testing consisted of a single "sniff test," whereby he smelled the defendant's breath.

"It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved. . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 58, 732 A.2d 808 (1999).

"Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . the [party] had the right to demonstrate that his failure to comply with the order of the trial court was excusable." (Internal quotation marks omitted.) Id., 59.

Even though the plaintiff unilaterally determined that he would not permit overnight visitation, the court, acting within its discretion, did not find him in contempt. The parties do not challenge that, and, in fact, our Supreme Court has held that "there may be circumstances in which an ambiguity in an order may preclude a finding of contempt . . . when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001). Nonetheless, "where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help. The appropriate remedy

for doubt about the meaning of a judgment is to seek a judicial resolution of any ambiguity; it is not to resort to self-help." Id., 720. Thus, our Supreme Court has held that "even if the court determines that because of such an ambiguity contempt would not be warranted, it may nonetheless enter an appropriate order . . . based on its interpretation of the judgment." Id., 723.

We conclude that the court did not improperly modify the parties' agreement, but rather enforced the judgment and that the plaintiff was not denied his due process rights. The court had before it for consideration the defendant's motion for contempt relative to the plaintiff's failure to comply with the provision of the parenting agreement granting the defendant overnight visitation with her six year old daughter as of December 4, 1998. The plaintiff correctly points out that this was the only issue before the court.[5] By unilaterally denying the defendant overnight visitation as of December 4, 1998, the plaintiff improperly acted as gatekeeper to the defendant's visitation. "The doors of the courthouse are always open; it is incumbent upon the parties to seek judicial resolution of any ambiguity in the language of judgments." Id., 722. It was necessary here for the court, and not the plaintiff, to interpret the parties' agreement to determine whether the defendant had satisfied the testing requirement. That is essential in classic high conflict, custody, postjudgment litigation.

It is inappropriate for the custodial parent in a high conflict case to be given decision-making control over the noncustodial parent's access to minor children. In approving the parenting agreement and in incorporating

[5] The plaintiff filed an objection to the motion in which he alleged that the defendant had failed to comply with what he claimed were the conditions precedent to overnight visitation, specifically, that he did not receive a report from Catrone indicating "satisfactory confirmation of the mother's recovery" and the compliance with drug testing, as set forth in the parenting agreement.

it into the judgment, the court relied on medical professionals, the guardian ad litem for Laura and counsel for the parties to communicate with respect to the testing requirements. The plaintiff had the obligation to alert the court if he believed that the testing was not in compliance with the judgment prior to his unilateral decision not to comply with the specific order in the judgment that overnight visitation commence on a certain date. The court in this instance, when ultimately informed that the judgment was not being complied with, appropriately inquired and set into motion the contemplated overnight visitation.

We conclude that the plaintiff had a fair opportunity to present evidence on the contested issue of the defendant's recovery. Upon hearing counsels' positions on the motion for contempt, the court admitted into evidence the deposition testimony of Schnitt. The plaintiff had chosen Schnitt to perform the defendant's drug testing and, prior to the admission of Schnitt's testimony, the plaintiff had agreed with the court's assessment that Schnitt was "the key" and indicated that he did not want to call him to testify in person.[6] The court,

---

[6] The plaintiff also indicated that he could call a "qualified drug administrator," David Duff Chambers, to testify regarding recovery. Chambers is a "substance abuse professional" with the United States Department of Transportation. The court stated that it did not "really know how to listen to Chambers," and he did not testify.

"Concerning expert testimony specifically, we note that the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 123, 763 A.2d 1 (2000). There is nothing in the record to suggest that Chambers had any special knowledge or skill with respect to evaluating the defendant's recovery. He is not a physician, and the defendant was not under his care. Moreover, the court had before it for consideration a random drug test protocol prepared by Chambers, and the court noted that Chambers' protocol was more extensive than Schnitt's.

after considering more than sixty pages of deposition testimony, determined that the defendant had complied with the testing requirements.

The court took into account that Schnitt's testimony revealed that he did not follow the testing procedures exactly as had been requested of him. In fact, on some occasions, the defendant was not tested every week and was not tested for all drugs for which tests had been ordered.[7] The court concluded that notwithstanding the inadequacies of Schnitt's testing protocol, which was entirely beyond the defendant's control, the defendant had complied with her obligation to submit to testing under the parenting agreement.

The record reveals that Schnitt's testing used a "broad panel toxicology screen" covering a variety of substances, including, inter alia, amphetamines, barbiturates, benzodiazepine, cocaine and opiates. The bulk of those tests, which took place during the course of a year, were negative. The court also was persuaded that Laura, who was six years old at the time, would be able to report any problems that may occur during overnight stays.[8] Thus, the court ordered overnight visi-

---

[7] Schnitt did not test for Ambien, Soma or alcohol. He also failed to repeat tests that on four occasions had indicated that the defendant's urine may have been diluted by consuming large quantities of fluids before testing. Schnitt's testimony also revealed that the defendant had failed to appear for certain drug tests when requested, allegedly due to scheduling problems, and she had on one occasion been prescribed Percocet.

[8] Although representations of counsel do not constitute evidence; *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 25–26, 783 A.2d 1157 (2001); we note that the child's guardian ad litem, Roberta S. Friedman, represented to the court that the child had communicated to her that she wanted to have overnights with the defendant and, "[o]n information and belief from both Connie Catrone and from [Alan M. Shulik, Laura's therapist,] there seems to be no reason whatsoever why this child could not spend each weekend Saturday overnight until Sunday."

A letter from Shulik dated July 28, 1999, clarified his position. It states in relevant part: "I have been impressed by the manner in which Laura had repeatedly and unambivalently expressed to me the wish to have overnight visits with her mother. . . . Reports of . . . significant problems during the visits were made to me on numerous occasions, however, by Laura's

tation in accordance with the parties' original parenting agreement.

We conclude that the plaintiff had a reasonable opportunity to be heard on the issues involved and that there was ample evidence to support the court's conclusion that the defendant had satisfied her obligations under the agreement such that overnight visitation should commence pursuant to the agreement. Having considered the entire record, we conclude that the court's order was founded on a reasonable basis and that the court acted well within its broad discretion in enforcing the underlying judgment.

B

The plaintiff next claims that the court improperly modified the parties' agreement when it ordered the evening visitation schedule to increase the time that Laura spends with the defendant. We agree.

The defendant argues that the court's order regarding weekday visitation properly constitutes "compensatory time" provided for in the parties' parenting agreement for the overnight visitation previously lost. Although "compensatory time" in light of the facts of this case may be a claim raised at a subsequent hearing, it was not properly before the court here.

The court, upon hearing argument from Laura's guardian ad litem at the contempt hearing, changed the parties' visitation schedule by ordering that the defendant be allowed to pick the child up at school at 3 p.m. and return her to the plaintiff at 7 p.m. on Monday, Wednesday and Friday evenings, thereby increasing the

father [including his allegations of neglect and improper supervision]. . . . My opinion on overnight visits is contingent upon (1) that Laura's mother meet the standards set for determination of recovery and abstinence from her addictive disorder and (2) that any possibility of neglect and/or poor supervision by Laura's mother has been completely ruled out." We note that the plaintiff challenges only the defendant's proof of continued sobriety.

defendant's time with the child. Previously, the defendant was enjoying visitation from 5:30 p.m. to 7:30 p.m. on Mondays, from 4 p.m. until 7:30 p.m. on Wednesdays and had no visitation on Fridays. Neither party had filed a motion for modification, and the court did not hear evidence regarding the best interest of the child.

"The authority to render orders concerning custody and visitation is found in General Statutes § 46b-56, which provides in relevant part: '(a) In any controversy before the Superior Court . . . the court may at any time make or modify any proper order regarding . . . custody and visitation. . . .' [Section 46b-56] further provides that in 'modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . .' General Statutes § 46b-56 (b). [Our Supreme Court] has limited the broad discretion given the trial court to modify custody orders under General Statutes § 46b-56 by requiring that modification of a custody award be based upon either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child. . . .

"To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstances warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. . . ." (Citation omitted; internal quotation marks omitted.) *Kelly* v. *Kelly*, supra, 54 Conn. App. 55–56. "It must, however, exercise that authority in a manner consistent with the due process requirements of fair notice and reasonable opportunity to be heard. . . . A custody [or

visitation] order cannot be modified without adequate notice and opportunity to be heard." (Citation omitted; internal quotation marks omitted.) *Taff* v. *Bettcher*, 35 Conn. App. 421, 430, 646 A.2d 875 (1994).

It is well settled that "[a] judgment cannot be founded on a finding of facts not in issue, although they may have been shown in evidence to which no proper objection was taken." (Internal quotation marks omitted.) *Westfall* v. *Westfall*, 46 Conn. App. 182, 185, 698 A.2d 927 (1997). "[W]hen a court has approved the provisions of a dissolution decree agreed upon by the parties, the court cannot modify or augment those provisions without following the requirements of due process." *Costello* v. *Costello*, 186 Conn. 773, 777, 443 A.2d 1282 (1982); see also *Guss* v. *Guss*, 1 Conn. App. 356, 361, 472 A.2d 790 (1984) (trial court cannot on own initiative modify alimony, child support orders); *Grobstein* v. *Grobstein*, 14 Conn. Sup. 378, 379 (1946) ("[n]o decrees concerning alimony, support or custody of children in an action for divorce can be vacated or modified by the mere act of the parties, but only upon application duly made to this court and then only upon consideration warranting such action"). "The purpose of requiring written motions is not only the orderly administration of justice; see *Malone* v. *Steinberg*, 138 Conn. 718, 721, 89 A.2d 213 (1952); but the fundamental requirement of due process of law. *Winick* v. *Winick*, [153 Conn. 294, 299, 216 A.2d 185 (1965)]." *Connolly* v. *Connolly*, 191 Conn. 468, 475, 464 A.2d 837 (1983).

We conclude that the court improperly modified the parties' evening visitation when it increased the time that Laura spends with the defendant during the week. The record makes clear that the court modified weekly visitation without a hearing and without consideration of the best interest of the child. We are not persuaded that the modifications were ordered properly under the broad equitable powers of the court or that such

changes are "so minimal" as not to require the taking of evidence, a finding of a material change in circumstances or a determination of the best interest of the child. We conclude that the increased evening visitation changes were not minimal in light of the parties' contentious relationship and, particularly, the plaintiff's longstanding concerns about the defendant's mental health as it relates to visitation. The change in visitation constituted a modification of the previous visitation order. The court therefore should not have modified weekly visitation without having held an evidentiary hearing to determine whether modification was in the best interest of the child. See *Kelly* v. *Kelly*, supra, 54 Conn. App. 57–58. As neither party sought to modify the provision of the parenting agreement to increase evening visitation and no evidence was heard on the subject, we conclude that the court abused its discretion. Changes made to the parties' visitation schedule, with the exception of overnight visitation, therefore are improper.

## C

The plaintiff next claims that the court abused its discretion when it modified the parties' agreement to limit the defendant's random drug testing to a period of six months. We agree.

As we have stated, to comport with the requirements of due process, a "[visitation] order cannot be modified without adequate notice and opportunity to be heard." (Internal quotation marks omitted.) *Taff* v. *Bettcher*, supra, 35 Conn. App. 430. In the present case, the plaintiff made an oral motion to modify the drug testing requirement such that it be given a finite end. No evidence was presented regarding whether a termination of testing would be in the best interest of the child or how long testing should continue. The court abused its discretion in limiting the defendant's drug testing to a six month period.

D

The plaintiff's last claim with respect to modification is that the court improperly modified the parties' agreement that they submit to mediation prior to seeking modification of their agreement because the court in fact modified their agreement without the parties' having submitted to mediation. Having vacated the court's orders of modification, we need not consider whether the court implicitly or otherwise obviated the parties' agreement to submit to mediation prior to seeking modification of their agreement.

II

The plaintiff next claims that the court abused its discretion by denying his motion for authorization to obtain the defendant's medical records for the preceding four years. We are not persuaded.

The following additional facts are relevant to the resolution of the plaintiff's claim. On February 11, 1999, the plaintiff filed a motion seeking authorization from the court to obtain the defendant's entire medical history for the previous four years. The plaintiff claimed that access to such records was necessary to determine the extent of the defendant's substance abuse and her progress toward recovery, as those factors related to overnight visitation. During oral argument on the motion, the plaintiff also stated "there's also a bipolar depression issue that may or may not enter into it." The court denied the motion.

The plaintiff argues that the defendant's records may be disclosed pursuant to General Statutes §§ 52-146c (c) (2)[9]

---

[9] General Statutes § 52-146c, which relates to psychologist-patient privilege, provides in relevant part: "(b) Except as provided in subsection (c) of this section, in civil and criminal actions, in juvenile, probate, commitment and arbitration proceedings, in proceedings preliminary to such actions or proceedings, and in legislative and administrative proceedings, all communications shall be privileged and a psychologist shall not disclose any such communications unless the person or his authorized representative consents to waive the privilege and allow such disclosure. The person or his authorized

and 52-146f (5).[10] Specifically, he contends that the defendant put her mental health in issue by conditioning overnight visitation on her continued sobriety.

"With respect to the appropriate standard of review, Practice Book § 13-14 (a) provides in relevant part that a trial court 'may, on motion [to compel production], make such order as the ends of justice require.' Consequently, the granting or denial of a discovery request rests in the sound discretion of the court . . . and can be reversed only if such an order constitutes an abuse of that discretion. The ultimate issue in our review is, therefore, whether the trial court reasonably could have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 51, 730 A.2d 51 (1999).

"To result in a waiver of the privilege, § 52-146c requires that, in addition to a party having put her own

representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the individual with whom or the office in which the original consent was filed. The withdrawal of consent shall not affect communications disclosed prior to notice of the withdrawal.

"(c) Consent of the person shall not be required for the disclosure of such person's communications . . . 2) If, in a civil proceeding, a person *introduces his psychological condition as an element of his claim or defense* or, after a person's death, his condition is introduced by a party claiming or defending through or as a beneficiary of the person, and the judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and psychologist be protected . . . ."

[10] General Statutes § 52-146f provides in relevant part: "Consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the following situations as specifically limited . . . (5) Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when his condition is introduced by a party claiming or defending through or as a beneficiary of the patient and the court or judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected."

mental health in issue, the court must have made a finding that 'it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and the psychologist be protected.' The statute, however, does not require that the court make some finding on this question. The burden is, therefore, on the party seeking to establish that the [evidence] is admissible to persuade the court to make a finding that justice requires its admission." *Cabrera* v. *Cabrera*, 23 Conn. App. 330, 339, 580 A.2d 1227, cert. denied, 216 Conn. 828, 582 A.2d 205 (1990).

We conclude that the court properly denied the plaintiff's motion for authorization to obtain the defendant's medical records because justice did not require their admission into evidence. The court made no finding that it did and, further, found that the plaintiff had all the records necessary to determine whether the defendant was in recovery and was complying with random testing. It follows that the court had determined that justice did not require that the privilege be overridden to introduce medical records that delved into the defendant's past medical history, including records prior to the dissolution. On the basis of our review of the entire record, we conclude that the court reasonably could have made that determination. We cannot say, therefore, that the court abused its discretion.

## IV

The plaintiff's final claim is that the court abused its discretion in awarding the defendant attorney's fees. Specifically, the plaintiff argues that the award was improper because it was not based on a finding of contempt. We decline to address his claim.

"Ordinarily, courts in this country do not award attorney's fees to the prevailing party unless there is a prior agreement between the parties or the payment of such

fees is provided for by statute. *Raph* v. *Vogeler*, 45 Conn. App. 56, 65, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997)." *Bonhotel* v. *Bonhotel*, 64 Conn. App. 561, 572, 781 A.2d 318, cert. denied, 258 Conn. 918, 782 A.2d 1241 (2001). "The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. Once a contempt has been found, [General Statutes] § 46b-87[11] establishes a trial court's power to sanction a noncomplying party through the award of attorney's fees. . . . Pursuant to § 46b-87, that sanction may be imposed without balancing the parties' respective financial abilities. . . . The award of attorney's fees in contempt proceedings is within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 534, 710 A.2d 757 (1998). It is undisputed that the court did not find the plaintiff in contempt. Section 46b-87 does not provide that attorney's fees be awarded to a moving party where there is no finding of contempt.[12] *Bonhotel* v. *Bonhotel*, supra, 64 Conn. App. 572–73 ("[b]ecause the defendant did not ask that

[11] General Statutes § 46b-87 provides: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt, provided if any such person is found not to be in contempt of such order, the court may award a reasonable attorney's fee to such person. The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with such an order shall be paid by the state as in criminal cases."

[12] The plaintiff also argues that the court's award of attorney's fees is improper pursuant to General Statutes § 52-256b (a) because there was no finding of contempt. Section 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt." The plaintiff is correct in his assertion that attorney's fees pursuant to that statutory subsection must be predicated on a finding of contempt. See *In re Jeffrey C.*, 64 Conn. App. 55, 63, 779 A.2d 765 (2001), rev'd on other grounds, 261 Conn. 189, 802 A.2d 772 (2002).

the plaintiff be found in contempt and he was not found to be in contempt and because certain of the items for which the defendant sought reimbursement are not included in the statute, the court properly denied the defendant's request for attorney's fees").

General Statutes § 46b-62, however, provides in relevant part that "[i]n any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and criteria set forth in [General Statutes §] 46b-82. . . ." An award of counsel fees under that statutory provision calls for the exercise of judicial discretion. *Lambert* v. *Donahue*, 69 Conn. App. 146, 150, 794 A.2d 547 (2002). In exercising its discretion, "the court must consider the statutory criteria set out in §§ 46b-62 and 46b-82 and the parties' respective financial abilities." Id.

In the present case, the court clearly predicated its award of attorney's fees on § 46b-62. We cannot review, however, whether the award was proper, because neither the record nor an articulation on the matter reveals the court's reasoning, specifically, whether or to what extent it considered the criteria set forth in § 46b-82. "As we often have stated: It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Zahringer* v. *Zahringer*, 69

Conn. App. 251, 256–57, 793 A.2d 1214 (2002). We therefore decline to address the question of whether the court's award of attorney's fees was an abuse of discretion.

The judgment is reversed only as to the orders allowing weekday evening visitation and limiting the period of substance abuse testing and the case is remanded for a status conference to determine whether the parties intend to file any motions and to determine a date for a hearing on any such motion.

In this opinion the other judges concurred.