IN RE JEFFREY C.*
(AC 20767)

Lavery, C. J., and Schaller and Flynn, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 20—officially released June 26, 2001

Sara R. Martin, for the appellant (respondent father).

*Mary K. Lenehan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

SCHALLER, J. The respondent father[1] appeals from the judgment of the trial court finding him in civil contempt,[2] granting attorney's fees for the preparation of a contempt motion by the office of the attorney general and issuing a temporary restraining order against him in this Juvenile Court proceeding. On appeal, the respondent claims that the court improperly (1) held him in contempt for failing to comply with the specific steps in the protective supervision order with respect to his son, Jeffrey C., (2) ordered him to pay attorney's fees in the contempt proceeding and (3) issued a temporary restraining order prohibiting contact with the mother or the couple's children. We conclude that the court exceeded its authority in issuing the contempt order and reverse the judgment.

The following facts and procedural history are relevant to this appeal. The commissioner of children and families (commissioner) filed a petition alleging neglect by the respondent and the mother of Jeffrey C. in failing to attend to his special medical needs as an asthmatic. The respondent and the mother entered pleas of nolo contendere to the neglect petition, and the court ordered that Jeffrey C. be placed in protective supervision for one year subject to the respondent's family following a series of specific steps. The steps required

---

[1] We refer in this opinion to the respondent father as the respondent.

[2] The contempt order is properly characterized as a civil contempt order because, inter alia, the court relied on Practice Book § 1-21A, which is entitled "Civil Contempt," and the court articulated that the contempt was against the rights of the commissioner rather than the court.

the respondent to attend all appointments with the department of children and families (department), to participate in family counseling, to submit to substance abuse counseling and adhere to recommendations of treatment, to submit to random drug testing, and to avoid substance abuse and other criminal activities.

The commissioner thereafter moved to modify the protective supervision order, and sought custody of Jeffrey C. and his sister because the respondent and the mother had failed to comply with the court-ordered specific steps. The court found that the respondent had not complied with the specific steps in that he had not attended family counseling sessions, had engaged in criminal activities, specifically, assault and driving under the influence of alcohol, and had failed to participate in substance abuse evaluation or treatment. The court subsequently extended the protective supervision order for an additional six months rather than committing the children to the custody of the commissioner. The court issued a supplemental order requiring the mother and the respondent to comply with the specific steps and to submit to a drug test within two weeks. The police arrested the respondent two days later for assault on the mother, criminal mischief and disorderly conduct.

As a result of the arrest, the commissioner filed a motion for contempt for the respondent's failure to comply with the court's protective supervision order. The commissioner also filed an application for an ex parte temporary restraining order. The court issued the temporary restraining order, which prohibited the respondent from entering the family residence or contacting the mother or children, except for visits at a rehabilitation center. The court scheduled a hearing for February 28, 2000.

At the hearing, the respondent stipulated that he had not complied with steps requiring participation in sub-

stance abuse treatment and prohibiting criminal activity. The court found him in civil contempt of the order and ordered that he pay attorney's fees. The court further extended the temporary restraining order to May 26, 2000, and added the requirement that any visits with the children be under the mother's supervision. The court granted the respondent's motion for articulation on the three orders that issued as a result of the February 28, 2000 hearing. The court stated that the respondent's noncompliance with any one of the specific steps could lead to a finding of contempt and that any one violation found to be a basis for the finding of contempt, under the appropriate facts, would support such a finding. The court characterized the contempt as civil contempt against the rights of the department and the award of attorney's fees as compensatory. The respondent now appeals from the judgment finding him in contempt, granting attorney's fees and issuing a temporary restraining order.

I

The respondent first claims that the court improperly held him in civil contempt for failure to comply with the specific steps set forth in the protective supervision order. The respondent claims that the specific steps described in General Statutes § 46b-129 (b)[3] may not be characterized as orders from which a finding of contempt may issue. We agree.[4]

___

[3] General Statutes § 46b-129 (b) provides in relevant part: "Upon issuance of an ex parte order, the court shall provide to the commissioner and the parent or guardian specific steps necessary for each to take to address the ex parte order for the parent or guardian to retain or regain custody of the child or youth."

[4] Because we conclude that the court improperly found the respondent in contempt for failure to comply with the specific steps, we need not decide whether the finding was also violative of the respondent's constitutional rights under the constitutions of the United States and Connecticut. We adhere to "the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions. . . . Indeed, wherever possible, it is incumbent upon a court to consider statutory issues before reaching constitutional questions." (Citations omitted; internal

"[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order. . . .

"Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." (Citations omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 527–28, 710 A.2d 757 (1998).

The respondent contends that a violation of the "specific steps" in the order is not a violation of an order and, therefore, noncompliance with one or more of the specific steps does not constitute contempt of a court order. We agree with the respondent.

Under our limited review, we conclude that a trial court unquestionably has the power pursuant to Gen-

quotation marks omitted.) *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 195, 635 A.2d 1220 (1994).

eral Statutes (Rev. to 1999) § 46b-121 (b)[5] to find in contempt those persons who violate orders pertaining to juvenile matters. The relevant question, therefore, is "whether the act or acts for which the penalty was imposed could constitute a contempt." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge,* supra, 244 Conn. 527.

The respondent argues that § 46b-129 does not contemplate a finding of contempt for failure to comply with the specific steps prescribed pursuant to a neglect proceeding. Section 46b-129 (b) provides that "[u]pon issuance of an ex parte order, the court shall provide to the commissioner and the parent or guardian *specific steps* necessary for each to take to address the ex parte order for the parent or guardian *to retain or regain custody of the child or youth*." (Emphasis added.) The court, in proceedings to terminate parental rights pursuant to General Statutes § 17a-112,[6] considers the specific

---

[5] General Statutes (Rev. to 1999) § 46b-121 (b) provides in relevant part: "In juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to parents, including any person who acknowledges before said court paternity of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to a child or youth therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to its jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. . . . Said court shall also have authority to grant and enforce injunctive relief, temporary or permanent in all proceedings concerning juvenile matters. . . . Any judge hearing a juvenile matter may make any other order in connection therewith within his authority to grant as a judge of the Superior Court and such order shall have the same force and effect as any other order of the Superior Court. In the enforcement of its orders, in connection with any juvenile matter, the court may issue process for the arrest of any person, compel attendance of witnesses and punish for contempt by a fine not exceeding one hundred dollars or imprisonment not exceeding six months. . . ."

[6] General Statutes § 17a-112 provides in relevant part: "(a) In respect to any child in the custody of the Commissioner of Children and Families in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in a pending or prior proceeding, or an attorney appointed by the Superior Court on its own motion, or an attorney retained by such child after attaining the age of fourteen, may petition the court for

steps issued in the order as a measure of the degree of "personal rehabilitation." *In re Shyliesh H.*, 56 Conn. App. 167, 179–80, 743 A.2d 165 (1999). If the specific steps in an ex parte order were to be construed as a series of individual orders, such a logical progression to § 17a-112 would not be possible, as § 46b-129 would itself end the process.

The specific steps are also considered "fair warning" of the potential termination of parental rights in subsequent proceedings pursuant to § 17a-112. Id., 179. The import of § 46b-129 (b) and our decision in *In re Shyliesh H.* is that the specific steps contained in the ex parte order are not themselves orders, but rather serve as criteria by which to measure personal rehabilitation and notice of impending termination of parental rights. We have stated that "[o]ur review of the relevant statutes leads us to conclude that an adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [*i*]*t is not directed against them as parents*, but rather is a finding that the children are neglected . . . ."

the termination of parental rights with reference to such child. . . .

\* \* \*

"(j) The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . that . . . the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

(Emphasis added; internal quotation marks omitted.) *In re David L.*, 54 Conn. App. 185, 191–92, 733 A.2d 897 (1999).

We conclude, therefore, that the specific steps prescribed by a court, pursuant to § 46b-129 (b), may not be interpreted as orders unto themselves from which the court may issue a contempt order. The court in the present case, therefore, improperly held the respondent in contempt of the ex parte order.

## II

The respondent further claims that the court improperly ordered him to pay attorney's fees in the contempt proceeding. We agree.

An award of attorney's fees pursuant to General Statutes § 52-256b[7] or Practice Book § 1-21A[8] first requires a finding of contempt. Because we concluded in part I that such finding was improper, we also conclude that the award of attorney's fees was improper.

## III

The respondent finally claims that the court improperly issued a temporary restraining order prohibiting contact with the mother or children. We decline to address the respondent's claim because it is moot.

The following additional facts are relevant to our disposition of the respondent's claim. During the hearing on the motions for contempt and for attorney's fees,

---

[7] General Statutes § 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

[8] Practice Book § 1-21A provides in relevant part: "Where . . . the dispute is between private litigants and the purpose for judicial intervention is remedial, then the contempt is civil, and any sanctions imposed by the judicial authority shall be coercive and nonpunitive, including fines, to ensure compliance and compensate the complainant for losses. . . ."

the court asked counsel for the plaintiff, "So, are you suggesting that continuing the [temporary restraining order] would be part of the remedy for a finding of civil contempt?" Counsel responded, "I think that would be appropriate and proper . . . ." The court concluded the hearing, stating, "As to the continuation of the temporary restraining order, I'm going to take that under advisement. I want to think about that a little more, but I'm going to resolve it with these two things in mind. First, that it appears that [the respondent] does have the use of alcohol or for other reasons does present a danger to everyone in the household and, second, my main objective here is to protect the children." The court granted the motions for contempt and for attorney's fees, and the temporary restraining order, which it stated was "entered separately this day," and annotated all of its orders on the state's motion for contempt. The temporary restraining order expired on May 26, 2000.

The previously mentioned colloquy raises concerns as to whether the temporary restraining order was an inseparable part of the contempt order and, thus, a final judgment, or a separate order that, as a temporary injunction, "generally is not a final judgment for purposes of appeal . . . ." (Citation omitted.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 451, 645 A.2d 978 (1994). We do not reach the question of whether the appeal was taken from a final judgment, however, because we conclude that the respondent's claim as to the temporary restraining order is moot. See *In re Alex M.*, 59 Conn. App. 389, 391 n.2, 757 A.2d 66 (2000).

The order expired, by its own terms, on May 26, 2000. As the order expired, we are unable to afford any practical relief to the respondent even if we were to conclude that the order was improper. "When, during the pendency of an appeal, events have occurred that

preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Citation omitted; internal quotation marks omitted.) *State* v. *Bostwick*, 251 Conn. 117, 118–19, 740 A.2d 381 (1999). "[E]ven if the factual issues to be determined lead to the conclusion that the appeal is moot because no practical relief is available, the appeal may nevertheless be heard under an exception that the issues on appeal are capable of repetition, yet evading review. See *Loisel* v. *Rowe*, 233 Conn. 370, 388, 660 A.2d 323 (1995)." *Karp* v. *New Britain*, 57 Conn. App. 312, 316 n.8, 748 A.2d 372 (2000).

"Our cases reveal that for an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, supra, 233 Conn. 382–83.

The respondent argues that the issue of the temporary restraining order is capable of repetition while evading

review. First, the respondent claims that the court improperly applied General Statutes §§ 46b-121 (b) and 52-473[9] as a basis for issuing the order, and may do so again in the future in contravention of other parties' procedural due process rights. Next, the respondent claims that he could be subject to a future temporary restraining order at any time. Finally, he asserts that the matter is of public importance given its constitutional ramifications in subjecting individuals to arbitrary and discriminatory laws. We disagree.

A temporary restraining order, by its very nature, is of limited duration subject to expiration prior to any appellate litigation that ensues. The respondent also has shown that he could be subject to future restraining orders, considering the two orders in this case. The respondent has not established, however, that the matter involved herein rises to the level of public importance contemplated by *Loisel*.

Although we agree with the respondent that the arbitrary and discriminatory application of laws would be a matter of public importance, we are not persuaded that the court in this case applied the law in an arbitrary and discriminatory manner. The respondent's contention is that the Juvenile Court exceeded its authority by issuing a temporary restraining order pursuant to § 46b-121 (b) and Practice Book § 1-21A. Because Prac-

---

[9] General Statutes § 52-473 provides: "(a) An injunction may be granted immediately, if the circumstances of the case demand it, or the court or judge may cause immediate notice of the application to be given to the adverse party, that he may show cause why the injunction should not be granted.

"(b) No temporary injunction may be granted without notice to the adverse party unless it clearly appears from the specific facts shown by affidavit or by verified complaint that irreparable loss or damage will result to the plaintiff before the matter can be heard on notice. It shall be sufficient, on such application for a temporary injunction, to present to the court or judge the original complaint containing the demand for an injunction, duly verified, without further complaint, application or motion in writing."

tice Book § 1-21A specifically applies to contempt proceedings and § 46b-121 constituted a separate basis for the court proceeding in the contempt matter, it is clear that the court issued the temporary restraining order using its civil contempt power. Our discussion in part I as to the impropriety of such a contempt decree limits this occurrence to the case at hand and precludes any far reaching impact in future Juvenile Court proceedings. Because the matter as presented is not capable of repetition, the respondent has failed to satisfy the exceptions of *Loisel* and the issue is moot.

The judgment of civil contempt and the order awarding attorney's fees are reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.