## IN RE JEFFREY C.*
## (SC 16595)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Reporter of Judicial Decisions

Argued March 20—officially released July 30, 2002

*Joseph Rubin*, associate attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Maureen D. Regula* and *Susan T. Pearlman*, assistant attorneys general, for the appellant (petitioner).

*Sara R. Martin*, for the appellee (respondent father).

*Opinion*

ZARELLA, J. The petitioner, the commissioner of children and families (commissioner), appeals, upon the granting of certification, from the judgment of the Appellate Court reversing the trial court's orders holding John C., the respondent father,[1] in civil contempt and awarding attorney's fees. The principal issue on appeal is whether the trial court, under the circumstances of this case, had authority to issue an order holding the respondent father in civil contempt. We answer this question in the affirmative and reverse the judgment of the Appellate Court to the contrary.

The record reveals the following relevant facts and procedural history. The commissioner filed an amended petition to adjudicate the respondents' minor child, Jeffrey C., uncared for. On February 9, 1999, after the respondents had entered pleas of nolo contendere to the allegations in the amended petition, the court issued an order directing that Jeffrey C. be placed in protective supervision for one year subject to the respondents' compliance with certain specific steps prescribed by the trial court. These steps required, inter alia, that the

---

[1] The commissioner named Dawn C., the minor child's mother, and John C., the minor child's father, as respondents in her petition. We hereinafter refer to Dawn C. and John C. collectively as the respondents and John C. as the respondent father.

respondents attend all scheduled appointments with the department of children and families, participate in family counseling, submit to substance abuse assessment, complete substance abuse treatment, submit to random drug testing, and refrain from abusing substances and engaging in criminal activities.

On August 18, 1999, the commissioner moved to open and modify the court's February 9, 1999 order. The commissioner sought commitment of Jeffrey C. owing to the respondents' failure to comply with the court-ordered specific steps. At the conclusion of the hearing on the commissioner's motion, the trial court concluded that the respondent father had failed to comply with certain of the court-ordered steps. The court specifically found that the respondent father had not attended family counseling sessions, had failed to participate in substance abuse assessment and treatment and had engaged in criminal activities, namely, assault and operating a motor vehicle under the influence of alcohol. Notwithstanding the foregoing findings, the trial court, on January 31, 2000, declined the commissioner's request for commitment and issued an order extending the term of protective supervision for an additional six months and issued supplemental orders, in which the trial court directed the respondents to comply with the specific steps or face the possibility of being held in contempt and, consequently, the possibility of incarceration or other sanctions.[2]

---

[2] The trial court issued the following written supplemental orders on January 31, 2000:

"1.) The Specific Steps approved by the Court on February 9, 1999, will continue in effect through the extended period of Protective Supervision unless the parties shall submit to this court on or before February 13, 2000, agreed upon or proposed Revised Specific Steps.

"2.) In the event that the respondents fail to comply with any one or more of the enumerated Specific Steps or with any Supplemental Order set forth herein, then the [commissioner] may move for an immediate Show Cause hearing in this court as to why the respondents should not be held in contempt for their failure to comply with said Specific Steps and/or Orders.

"3.) Upon such a hearing, the respondents shall risk incarceration or other

On February 2, 2000, two days after the trial court's issuance of its supplemental orders, the respondent father was arrested for assaulting his mother, Lorna C., and for criminal mischief and disorderly conduct. On February 10, 2000, the commissioner filed a motion for contempt, citing the respondent father's failure to comply with the trial court's February 9, 1999 order and January 31, 2000 supplemental orders. Additionally, on February 23, 2000, the commissioner filed a motion seeking attorney's fees, pursuant to General Statutes § 52-256b,[3] for, inter alia, the preparation of the contempt motion. A hearing was held on the matter at which the respondent father admitted that he had failed to comply with two of the court-ordered steps, namely, that he refrain from engaging in criminal activities and from abusing substances. Consequently, the trial court held the respondent in civil contempt and ordered him to pay attorney's fees.

The respondent father appealed to the Appellate Court, challenging the trial court's authority to hold him in civil contempt, its award of attorney's fees and its issuance of a temporary restraining order limiting his contact with Jeffrey C., among other family members. *In re Jeffrey C.*, 64 Conn. App. 55, 57, 779 A.2d

appropriate civil contempt sanctions imposed by the Court to ensure compliance.

"4.) In addition, this Court may refer the matter to the Office of the State's Attorney for Nonsummary Criminal Contempt proceedings pursuant to [Practice Book § 1-18].

"5.) The respondents are further ordered to submit to a hair test within two weeks from the date hereof, said arrangements to be handled by [the department of children and families].

"6.) This court shall retain jurisdiction of the matter during the entire extended period of Protective Supervision."

[3] General Statutes § 52-256b provides in relevant part: "(a) When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt. . . ."

765 (2001). The Appellate Court declined to address the respondent father's claim concerning the temporary restraining order, concluding that it was moot, the order having previously expired. Id., 63, 64. The Appellate Court did, however, address the respondent father's other claims. The Appellate Court concluded that the trial "court exceeded its authority in issuing the contempt order"; id., 57; and, consequently, reversed the trial court's contempt order and order awarding attorney's fees. Id. Subsequently, we granted the commissioner's petition for certification to appeal to this court.[4] *In re Jeffrey C.*, 258 Conn. 924, 783 A.2d 1027 (2001). This appeal followed.

I

The commissioner claims on appeal that the Appellate Court improperly concluded that both the February 9, 1999 order and the January 31, 2000 supplemental orders were not court orders with which a failure to comply could result in a finding of contempt. We agree with the commissioner that the January 31, 2000 supplemental orders were properly enforceable by a finding of civil contempt pursuant to § 46b-121 (b) and, accordingly, we need not reach the merits of the commissioner's claim concerning the enforceability of the February 9, 1999 court order.

In reviewing the trial court's finding of contempt, we are guided by standards that limit our review. "[O]ur

---

[4] We certified the following issue for appeal: "Are 'specific steps' ordered by a court, following a hearing at which the parent is present and represented by counsel, court orders from which a finding of contempt may issue?" *In re Jeffrey C.*, 258 Conn. 924, 783 A.2d 1027 (2001). In view of our conclusion that the trial court had authority to issue a contempt order on the basis of the respondent father's failure to comply with the court's January 31, 2000 supplemental orders, we need not answer the certified question in the broad terms in which it was framed. Cf., e.g., *Stamford Hospital v. Vega*, 236 Conn. 646, 648 n.1, 674 A.2d 821 (1996) (this court may rephrase certified questions in order to render them more accurate in framing issues presented).

review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order. . . .

"Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." (Citations omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 527–28, 710 A.2d 757 (1998).

General Statutes (Rev. to 1999) § 46b-121 (b) provides in relevant part: "In juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to parents, including any person who acknowledges before said court paternity of a child born out of wedlock, guardians, custodians or other adult persons owing some legal duty to a child or youth therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child

or youth subject to its jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. . . Any judge hearing a juvenile matter may make any other order in connection therewith within his authority to grant as a judge of the Superior Court and *such order shall have the same force and effect as any other order of the Superior Court.* In the enforcement of its orders, in connection with any juvenile matter, the court may issue process for the arrest of any person, compel attendance of witnesses and punish for contempt by a fine not exceeding one hundred dollars or imprisonment not exceeding six months. . . ." (Emphasis added.)

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *Wilson* v. *Cohen*, 222 Conn. 591, 596 n.5, 610 A.2d 1117 (1992). Pursuant to § 46b-121 (b), the trial court has authority to find in contempt those individuals who fail to comply with orders issued in connection with juvenile matters. Although the Appellate Court acknowledged the trial court's authority "to find in contempt those persons who violate orders pertaining to juvenile matters"; *In re Jeffrey C.*, supra, 64 Conn. App. 61; it nevertheless focused on the February 9, 1999 court-ordered specific steps, rather than the January 31, 2000 supplemental orders, in holding that "the specific steps prescribed by the court, pursuant to [General Statutes] § 46b-129 (b), may not be interpreted as orders unto themselves from which the court may issue a contempt order." Id., 63. In other words, the Appellate Court focused solely on whether the court-ordered specific steps themselves, rather than the January 31, 2000 supplemental orders in which the trial court directed the respondents to comply with those steps or face the possibility of being held in contempt, may be interpreted as court orders. Because we conclude that the January 31, 2000 supple-

mental orders were court orders, with which a failure to comply could result in a finding of contempt, we need not address the issue of whether a failure to comply with the court-ordered specific steps themselves, which served as the basis underlying the Appellate Court's analysis, can result in a finding of civil contempt. The trial court's January 31, 2000 supplemental orders, like any other trial court orders, were orders with which a failure to comply could result in a finding of civil contempt.

II

As an alternate ground for affirming the judgment of the Appellate Court,[5] the respondent father argues that the trial court effectively held him in criminal contempt rather than civil contempt because he was not afforded an "opportunity to purge himself of the contempt by complying with the orders that [he was found to have] violated." We disagree.

"Our case law classifies civil contempt as conduct directed against the rights of the opposing party . . . while criminal contempt consists of conduct that is directed against the dignity and authority of the court." (Citations omitted.) *Ullmann* v. *State*, 230 Conn. 698, 707, 647 A.2d 324 (1994). "[I]t is the nature of the relief itself that is instructive in determining whether a contempt is civil or criminal. A contempt fine is civil if it either coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant

---

[5] The respondent father also raises certain constitutional claims as an alternate basis for affirming the judgment of the Appellate Court. We decline to review these claims, however. "Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 115, 653 A.2d 782 (1995). "[C]laims on appeal that are inadequately briefed are deemed abandoned." (Internal quotation marks omitted.) *State* v. *Salvatore*, 57 Conn. App. 396, 401, 749 A.2d 71, cert. denied, 253 Conn. 921, 755 A.2d 216 (2000).

for losses sustained. . . . Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." (Internal quotation marks omitted.) Id., 709–10.

Thus, although it is true that, in civil contempt proceedings, the contemnor must be afforded the opportunity to purge himself of the contempt, this is only a consideration when punishment, such as imprisonment or a noncompensatory fine, has been imposed in accordance with the finding of contempt. See *Eldridge* v. *Eldridge*, supra, 244 Conn. 533; cf. *Ullmann* v. *State*, supra, 230 Conn. 710. In the present case, the trial court did not impose a noncompensatory fine or other punishment. Rather, the trial court ordered that the respondent father pay attorney's fees pursuant to § 52-256b to compensate the commissioner for expenses incurred in enforcing compliance with the orders of the trial court. See *Eldridge* v. *Eldridge*, supra, 533. Thus, the fact that the respondent father was not offered the opportunity to purge himself of his contemptuous behavior does not, under the circumstances of this case, in any way undermine the trial court's finding of contempt.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's orders holding the respondent father in contempt and awarding attorney's fees.

In this opinion the other justices concurred.