## IN RE DEVON B.*
### (SC 16930)

Sullivan, C. J., Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.[1]

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] This case originally was argued before a panel of this court consisting of Justices Borden, Norcott, Katz, Vertefeuille and Zarella. Subsequently, the court, pursuant to Practice Book § 70-7 (b), ordered that the case be considered en banc. Accordingly, Chief Justice Sullivan and Justice Palmer were added to the panel, and they have read the record and briefs, and have listened to the tape recording of the oral argument.

*(Three justices dissenting in one opinion)*

Argued March 11—officially released July 8, 2003

*Bradford J. Chaucer,* for the appellant (respondent mother).

*Susan T. Pearlman,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Renee Bevacqua Bollier,* assistant attorney general, for the appellee (petitioner).

*Opinion*

KATZ, J. The respondent,[2] Tammy M., appeals[3] from the judgment of the trial court committing her infant

---

[2] Although the petition for neglect named both biological parents as respondents, only the respondent mother is involved in this appeal. References herein to the respondent are to the mother.

[3] The respondent appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

son, Devon B., to the custody of the petitioner, the department of children and families. The dispositive issue on appeal is the respondent's claim that the court improperly denied her motion to cite in the department of mental retardation as a necessary party.[4] We conclude that the court abused its discretion in denying the respondent's motion, and, accordingly, reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The respondent is mentally handicapped, and has been receiving services from the department of mental retardation since 1991. The respondent gave birth to Devon on September 10, 2001, at Yale-New Haven Hospital. At the time of Devon's birth, the respondent was homeless[5] and had been working with the department of mental retardation to secure housing for herself and her child, but those efforts had been unsuccessful. Due to her situation, employees of the Yale-New Haven Hospital Women's Center questioned the respondent's ability to care for Devon and contacted the petitioner. On September 13, 2001, pursuant to General Statutes (Rev. to 2001) § 46b-129 (a),[6] the petitioner filed a neglect petition and an application for temporary

[4] The respondent also claimed in her brief to this court that the trial court improperly denied her motion to stay the trial after the court had found her to be incompetent. At oral argument, however, the respondent withdrew this claim, and, therefore, we do not consider it.

Additionally, the respondent claims that the trial court improperly issued specific steps for the respondent to follow for facilitating the return of her child without considering her disability as required under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Because we reverse the decision of the trial court, we also need not address this claim.

[5] At one time the respondent had lived with her grandmother, who is an alcoholic, but was told by her grandmother that she could no longer stay with her because the respondent was not named as a tenant on the grandmother's apartment lease. The respondent also had stayed with her mother, who also is mentally retarded and under the care of the department of mental retardation. The respondent, however, was not on her mother's lease either, and the department's policies prohibit persons not named on the lease from staying in program housing.

[6] General Statutes (Rev. to 2001) § 46b-129 (a) provides: "Any selectman, town manager, or town, city, or borough welfare department, any probation

custody in the Superior Court, Juvenile Matters, claiming that the respondent was incapable of providing care and a home for Devon. The application was granted ex parte by the court, *Esposito, J.*, and, on September 21, 2001, a hearing was held on the matter, pursuant to § 46b-129 (b).[7] At the hearing, the court appointed an

officer, or the Commissioner of Social Services, the Commissioner of Children and Families or any child-caring institution or agency approved by the Commissioner of Children and Families, a child or his representative or attorney or a foster parent of a child, having information that a child or youth is neglected, uncared-for or dependent, may file with the Superior Court which has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for, or dependent, within the meaning of section 46b-120, the name, date of birth, sex, and residence of the child or youth, the name and residence of his parents or guardian, and praying for appropriate action by the court in conformity with the provisions of this chapter. Upon the filing of such a petition, except as otherwise provided in subsection (k) of section 17a-112, the court shall cause a summons to be issued requiring the parent or parents or the guardian of the child or youth to appear in court at the time and place named, which summons shall be served not less than fourteen days before the date of the hearing in the manner prescribed by section 46b-128, and said court shall further give notice to the petitioner and to the Commissioner of Children and Families of the time and place when the petition is to be heard not less than fourteen days prior to the hearing in question."

[7] General Statutes (Rev. to 2001) § 46b-129 (b) provides in relevant part: "If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or subsequent thereto, that there is reasonable cause to believe that (1) the child is suffering from serious physical illness or serious physical injury or is in immediate physical danger from his surroundings and (2) that as a result of said conditions, the child's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's safety, the court shall either (A) issue an order to the parents or other person having responsibility for the care of the child or youth to appear at such time as the court may designate to determine whether the court should vest in some suitable agency or person the child's or youth's temporary care and custody pending disposition of the petition, or (B) issue an order ex parte vesting in some suitable agency or person the child's or youth's temporary care and custody. A preliminary hearing on any ex parte custody order or order to appear issued by the court shall be held within ten days from the issuance of such order. The service of such orders may be made by any officer authorized by law to serve process, or by any probation officer appointed in accordance with section 46b-123, investigator from the Department of Administrative

attorney and a guardian ad litem for the respondent, ordered a competency examination, and, by agreement of the parties, sustained the order for temporary custody.

After rejecting an initial competency evaluation as unsatisfactory, the court held a competency hearing on April 11, 2002. At that time, Charles Dike, a physician and forensic psychiatric fellow at Yale University who had examined the respondent, testified that the respondent was not competent to stand trial, but that he could not render an opinion as to whether she was restorable to competency. Thereafter, the court found that the respondent was incompetent, but restorable,[8] and

Services, state or local police officer or indifferent person. Such orders shall include a conspicuous notice to the respondent written in clear and simple language containing at least the following information: (i) That the order contains allegations that conditions in the home have endangered the safety and welfare of the child; (ii) that a hearing will be held on the date on the form; (iii) that the hearing is the opportunity to present the parents' position concerning the alleged facts; (iv) that an attorney will be appointed for parents who cannot afford an attorney; (v) that such parents may apply for a court-appointed attorney by going in person to the court address on the form and are advised to go as soon as possible in order for the attorney to prepare for the hearing; and (vi) if such parents have any questions concerning the case or appointment of counsel, any such parent is advised to go to the court or call the clerk's office at the court as soon as possible. . . . The agency shall file in writing with the clerk of the court the reasons for placing the child in a particular placement outside the town where the child resides. Upon issuance of an ex parte order, the court shall provide to the commissioner [of children and families] and the parent or guardian specific steps necessary for each to take to address the ex parte order for the parent or guardian to retain or regain custody of the child or youth."

Section 46b-129 (b) was amended in 2002. See footnote 13 of this opinion for the amended text of the statute.

[8] In a subsequent proceeding, the trial court stated that it had not found "necessarily that the [respondent] . . . was restorable. The court was unclear, based on the expert testimony, as to whether she was restorable. And I left it up to counsel and the guardian ad litem for the [respondent] to make whatever accommodations or arrangements they needed to make to decide whether or not they wanted to attempt to restore her. That's what the court ruled." Because the respondent withdrew her claim on appeal related to the issue of her competency; see footnote 4 of this opinion; we need not resolve this inconsistency.

ordered her attorney and guardian to take the steps that they thought were necessary to restore her to competency. Additionally, the court set a date for a trial on the neglect petition.

Shortly before the commencement of trial, the respondent filed a motion for a continuance, pursuant to Practice Book § 35-2 (b),[9] and a motion to cite in the department of mental retardation as a necessary party, pursuant to Practice Book § 9-18.[10] Specifically, the respondent contended that a continuance was necessary so that the petitioner could hire appropriate professionals to restore the respondent to competency. She also asserted that it would not be possible for the court to issue meaningful specific steps to facilitate reunification with her child, as required under General Statutes (Rev. to 2001) § 46b-129 (j), as amended by Public Acts 2001, No. 01-142, § 6,[11] without the joinder of the depart-

[9] Practice Book § 35-2 (b), which was repealed January 1, 2003, provided: "Applications for a continuance or advancement of a hearing may be made in writing or orally to the trial judge where the hearing is scheduled, but shall not be allowed unless approved by the judge. Notice of said application shall be promptly provided to all counsel by the applicant. The court shall provide notice of the hearing date."

[10] Practice Book § 9-18 provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party."

[11] General Statutes (Rev. to 2001) § 46b-129 (j), as amended by Public Acts 2001, No. 01-142, § 6, provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit such child or youth to the Commissioner of Children and Families. Such commitment shall remain in effect until further order of the court pursuant to the provisions of subsection (k) of this section, as amended . . . provided such commitment may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency which is permitted by law to care for neglected, uncared-for or dependent children or youth or with any person or persons found to be suitable and worthy of such responsibility by the court. *The court shall order specific steps which the*

ment of mental retardation as a party. The court denied both motions.

At trial, the court heard testimony from Reginald Hayes, the respondent's social worker from the department of mental retardation, who testified that the respondent was unable to earn a living or function on her own. Hayes also testified that the respondent required an assisted living environment, and that the department was attempting to procure such a facility for her, but thus far had been unsuccessful. He further testified that the department had been working to procure vocational training for the respondent.

Megan Pace and Mark Terreri, two social workers employed by the petitioner who had worked with the respondent, testified as to the services that the petitioner could offer the respondent. Pace testified that the petitioner could make housing referrals, but did not in this case "because [the department of mental retardation] was already involved in the case." Pace also indicated that the petitioner had not offered the respondent an opportunity to participate in parenting classes. Pace stated that the respondent was involved in the 'R Kids program, which provides certain parenting services, but that she did not ask 'R Kids to provide the respondent with any parenting classes, and was unaware if 'R Kids could assist the respondent in her parenting. Terreri testified that, although 'R Kids offers parenting classes, he was unaware if the respondent had been involved in those classes. Terreri had, however, contacted the department of mental retardation about parenting classes, and "[it was] going to look into an appropriate class for [the respondent]." Terreri indicated that he did not know if the department had been successful in arranging those classes for the respondent.

parent must take to facilitate the return of the child or youth to the custody of such parent. . . ." (Emphasis added.)

At the conclusion of all the testimony, the court adjudicated Devon as "uncared for due to homeless[ness]," and committed him to the care of the petitioner. The court also issued specific steps to the respondent, with the caveat that there was no guarantee that compliance with all of the steps would ensure Devon's return to her. Specifically, the respondent was required to: (1) work with and attend all meetings with the petitioner; (2) inform the petitioner of any changes in her contact information, such as her address and telephone number; (3) attend parental and individual counseling; (4) continue to work with the department of mental retardation; and (5) continue working with the 'R Kids program. This appeal followed.

The respondent claims that the trial court abused its discretion when it denied her motion to cite in the department of mental retardation as a necessary party. The petitioner responds that the department is not a necessary party, because it does not have an interest in the neglect proceeding. Moreover, it asserts that under § 46b-129 (b), for an order of temporary custody, the court is required only to issue specific steps to the petitioner and the parents. Put another way, the petitioner maintains that, because the department of mental retardation is not the responsible agency under the statute, and the statute does not require that department's involvement in the specific steps, the trial court properly denied the respondent's motion to cite in the department as a necessary party. We disagree with the petitioner's unduly narrow view of the basis for citing in a necessary party under the facts of this case.

"Necessary parties . . . are those [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their

interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties."[12] (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 225–26 n.10, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 208 (1997). "A party is deemed necessary if its presence is absolutely required in order to assure a fair and equitable trial. . . . *Biro* v. *Hill*, 214 Conn. 1, 6, 570 A.2d 182 (1990)." (Internal quotation marks omitted.) *Caswell Cove Condominium Assn., Inc.* v. *Milford Partners, Inc.*, 58 Conn. App. 217, 224, 753 A.2d 361, cert. denied, 254 Conn. 922, 759 A.2d 1023 (2000).

"The decision whether to grant a motion for the addition of a party to pending legal proceedings rests generally in the sound discretion of the trial court." (Internal quotation marks omitted.) *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 747, 699 A.2d 73 (1997). Accordingly, "[o]ur review . . . is confined to determining whether the trial court abused its discretion. . . . Judicial discretion [however] . . . is always legal discretion, exercised according to the recognized principles of equity. . . . While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Rivera* v. *Veterans Memorial*

[12] In the past, there had been a distinction between "necessary" and "indispensable" parties. See *Shields* v. *Barrow*, 58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1855) (defining both terms). Over time, however, this distinction has become less pronounced; see *Sturman* v. *Socha*, 191 Conn. 1, 6, 463 A.2d 527 (1983) (recognizing that misleading nature of terms "has resulted in a blurring of the distinction typically drawn between them"); and provisions of our Practice Book and General Statutes currently refer only to necessary parties. See, e.g., Practice Book §§ 9-6 and 9-24; General Statutes §§ 8-8 (f) and 12-638n.

*Medical Center,* 262 Conn. 730, 742–43, 818 A.2d 731 (2003). "In essence, the trial judge's discretion should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983).

Applying these principles, and with particular attention to § 46b-129, which requires reasonable efforts be made to reunite a parent and his or her child, we conclude that the department of mental retardation is a necessary party in the present case. Specifically, subsection (b) of the statute provides in relevant part that "[u]pon issuance of an ex parte order, the court shall provide to *the commissioner [of children and families]* and the parent or guardian *specific steps necessary for each to take to address the ex parte order for the parent or guardian to retain or regain custody of the child or youth.*" (Emphasis added.) General Statutes (Rev. to 2001) § 46b-129 (b).[13] Additionally, the statute provides that after a hearing on the order of temporary custody, the court "shall order specific steps *the commissioner* and the parent or guardian *shall take for the parent or guardian to regain or to retain custody of the child or youth* . . . ." (Emphasis added.) General Statutes § 46b-129 (d). Furthermore, these goals remain paramount, even following an adjudication that a child is uncared for. See, e.g., General Statutes § 46b-129 (j). In

---

[13] Section 46b-129 (b) was amended in 2002; see Public Acts 2002, Spec. Sess., May, 2002, No. 02-7, § 29; by the addition of the following provision: "Upon the issuance of such [ex parte] order, or not later than sixty days after the issuance of such order, *the court shall make a determination whether the Department of Children and Families made reasonable efforts to keep the child or youth with his or her parents or guardian prior to the issuance of such order and, if such efforts were not made, whether such reasonable efforts were not possible,* taking into consideration the child's or youth's best interests, including the child's or youth's health and safety." (Emphasis added.)

other words, the petitioner, through the specific steps issued by the court, is statutorily obligated to help the parent, if possible, regain custody of her child.

The present case, however, provides an unusual complication to the petitioner's ability to fulfill its obligation—the respondent is mentally retarded. Additionally, she is homeless. These facts obviously weighed heavily in the petitioner's decision to file its petition for custody. Therefore, it is evident that securing suitable housing and support services are essential if the respondent ever is to regain custody of her child. Indeed, although it is unclear from the record what valuable services the petitioner can offer to the respondent, it is evident that residential placement—which would solve the respondent's homelessness—as well as coordination of services, such as parenting classes, best can be provided by the department of mental retardation. Unlike that department, the petitioner is not charged statutorily with providing services to mentally retarded persons, nor is it equipped to provide such services.[14] Compare General Statutes § 17a-3[15] with General Statutes §§ 17a-

---

[14] Indeed, the petitioner essentially has acknowledged its inability to provide appropriate services when, at oral argument before this court, it conceded that it does not have the resources to offer the types of programs that the department of mental retardation offers.

[15] General Statutes § 17a-3 provides in relevant part: "The department [of children and families] shall plan, create, develop, operate or arrange for, administer and evaluate a comprehensive and integrated state-wide program of services, including preventive services, for children and youth whose behavior does not conform to the law or to acceptable community standards, or who are mentally ill, including deaf and hearing impaired children and youth who are mentally ill, emotionally disturbed, substance abusers, delinquent, abused, neglected or uncared for, including all children and youth who are or may be committed to it by any court, and all children and youth voluntarily admitted to the department for services of any kind. Services shall not be denied to any such child or youth solely because of other complicating or multiple disabilities. The department shall work in cooperation with other child-serving agencies and organizations to provide or arrange for preventive programs, including but not limited to teenage pregnancy and youth suicide prevention, for children and youth and their families. The program shall provide services and placements that are clinically indi-

210 (a)[16] and 17a-217 (a).[17]

It is clear, therefore, that the petitioner statutorily is obligated to effectuate the respondent's reunification with her child, and, in order to accomplish that obligation, the petitioner needs to address the respondent's homelessness and other needs in light of her mental disability. Under these circumstances, it is evident that the coordination of efforts between the petitioner and

cated and appropriate to the needs of the child or youth. In furtherance of this purpose, the department shall: (a) Maintain the Connecticut Juvenile Training School and other appropriate facilities exclusively for delinquents; (b) develop a comprehensive program for prevention of problems of children and youth and provide a flexible, innovative and effective program for the placement, care and treatment of children and youth committed by any court to the department, transferred to the department by other departments, or voluntarily admitted to the department; (c) *provide appropriate services to families of children and youth as needed to achieve the purposes of sections 17a-1 to 17a-26, inclusive, 17a-28 to 17a-49, inclusive, and 17a-51* . . . ." (Emphasis added.)

[16] General Statutes § 17a-210 (a) provides in relevant part: "There shall be a Department of Mental Retardation. *The Department of Mental Retardation, with the advice of a Council on Mental Retardation, shall be responsible for the planning, development and administration of complete, comprehensive and integrated state-wide services for persons with mental retardation* and persons medically diagnosed as having Prader-Willi syndrome. . . . The commissioner shall be responsible, with the advice of the council, for: (1) Planning and developing complete, comprehensive and integrated state-wide services for persons with mental retardation; (2) the implementation and where appropriate the funding of such services; and (3) the coordination of the efforts of the Department of Mental Retardation with those of other state departments and agencies, municipal governments and private agencies concerned with and providing services for persons with mental retardation. . . ." (Emphasis added.)

[17] General Statutes § 17a-217 (a) provides in relevant part: "The Department of Mental Retardation shall develop day care programs, day camp programs and recreational programs for children and adults with mental retardation. . . . For the purposes of this section: (1) A day care program (A) may provide for the care and training of preschool age children to enable them to achieve their maximum social, physical and emotional potential; (B) may provide adolescents and adults with mental retardation with an activity program which includes training in one or more of the following areas: (i) Self-care, (ii) activities of daily living, (iii) personal and social adjustment, (iv) work habits, and (v) skills, speech and language development . . . ."

the department of mental retardation is essential to this goal. Indeed, Terreri testified that he was in contact with the department "on a regular basis . . . to keep apprised of what was going on." Therefore, the department is a necessary party because the trial court cannot "proceed to a decree, and do complete and final justice"; (internal quotation marks omitted) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, supra, 238 Conn. 225–26 n.10; without its joinder.

"The requirement of reunification efforts provides additional substantive protection for any parent who contests a termination action, *and places a concomitant burden on the state to take appropriate measures designed to secure reunification of parent and child.*" (Emphasis added.) *In re Eden F.*, 250 Conn. 674, 696, 741 A.2d 873 (1999). This requirement is based on the well settled notion that "[t]he right of a parent to raise his or her children [is] recognized as a basic constitutional right. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Lehrer* v. *Davis*, 214 Conn. 232, 236, 571 A.2d 691 (1990). Accordingly, it has been held that the due process clause of the fourteenth amendment to the United States constitution applies when a state seeks to terminate the relationship between parent and child. *Lassiter* v. *Department of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)." *In re Alexander V.*, 223 Conn. 557, 560, 613 A.2d 780 (1992). Although the present appeal does not concern a termination proceeding, we note that specific steps are considered to be "fair warning" to a parent of the potential termination of parental rights in subsequent proceedings. *In re Jeffrey C.*, 64 Conn. App. 55, 62, 779 A.2d 765 (2001), rev'd on other grounds, 261 Conn. 189, 802 A.2d 772 (2002). Indeed, the failure to comply with specific steps ordered by the court typically weighs heavily in a termination proceeding. Therefore, in the present case, the appropriate measure would

have been to add the department of mental retardation—the agency that best can ensure the respondent's compliance with the specific steps addressed to her retardation and homelessness—as a party.

Nevertheless, the petitioner contends that there is no need to join the department of mental retardation as a necessary party, as that department and the respondent already are working together to fashion appropriate services for the respondent. Specifically, the petitioner points to the specific step ordering that the respondent *continue* to work with the department, and therefore contends that the department properly was not added as a party. We disagree.

Ordering the *respondent* to continue to work with the department of mental retardation does not ensure that that department will provide her with the necessary services to help her regain custody of her child.[18] The court's order does not provide for the department to undertake a certain plan of action. Indeed, because the department of mental retardation is not a party to the proceeding, the court *cannot* order it to provide such services. See *Graham* v. *Zimmerman*, 181 Conn. 367, 373–74, 435 A.2d 996 (1980) ("This court has no jurisdiction over persons who have not been made parties to the action before it. Any judgment rendered in this action . . . would not be binding as to them."); see also *East Haven* v. *AFSCME, Council 15, Local 1662*, 212 Conn. 368, 373, 561 A.2d 1388 (1989) ("court cannot render a judgment enforceable against a nonparty"). This deficiency is problematic, if not devastating, to the respondent in light of the fact that the services she

---

[18] Indeed, although Terreri's testimony indicated that he had contacted the department of mental retardation about parenting classes for the respondent, there was nothing in the record to indicate that it in fact had arranged any classes. Furthermore, any suggestion by the petitioner that it is up to the *respondent* to take certain initiatives is Kafkaesque. See F. Kafka, The Trial (W. Muir & E. Muir, trans., Alfred A. Knopf Rev. Ed. 1982).

needs most are provided by the department of mental retardation, and the evidence presented at trial indicates that that department has done little to secure or provide those services. By adding the department as a party, the trial court would have the authority that it otherwise lacks to compel that department and the petitioner to work together, something that is not possible with the the the department's current nonparty status.

By adding the department of mental retardation as a party, the court can make a final determination on the entire controversy, consistent with "equity and good conscience."[19] *Shields* v. *Barrow*, 58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1855). "The necessary parties rules originated in equity and expressed the principle that a court of equity, once it undertook a case, would not do justice 'by halves' but would seek to clean up the whole controversy." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 10.11, pp. 531–32. Because under the facts of this case, the department of mental retardation's joinder is "absolutely required in order to assure a fair and equitable" result; (internal quotation marks omitted) *Biro* v. *Hill*, supra, 214 Conn. 6; the trial court abused its discretion in denying the respondent's motion to cite in that department as a party.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion BORDEN, NORCOTT and PALMER, Js., concurred.

SULLIVAN, C. J., with whom VERTEFEUILLE and ZARELLA, Js., join, dissenting. The majority concludes

___

[19] At oral argument before this court, the respondent represented that a conservator of both her estate and her person had been appointed by the Probate Court at the request of the department of mental retardation. Our review of the record shows, however, that the Probate Court appointed a conservator of her estate only. We strongly suggest that, following our remand, the conservator also be made a party in this action.

that the trial court abused its discretion in denying the motion of the respondent, Tammy M., to cite in the department of mental retardation as a necessary party to this neglect proceeding. I disagree. I would conclude that the trial court has no jurisdiction over the department of mental retardation because the respondent has not exhausted her administrative remedies. I would also conclude that, even in the absence of that bar to the trial court's jurisdiction, the department of mental retardation had no legal interest or obligation in the proceeding and, therefore, is neither a necessary nor an appropriate party. I also believe that the majority's decision will greatly complicate and prolong neglect proceedings, ultimately to the detriment of the very persons whom the majority intends to protect. I address each of these conclusions in turn.

First, and most fundamentally, even if it were assumed that the department of mental retardation is failing to meet its statutory obligations to the respondent,[1] the respondent has provided no authority for the proposition that the trial court has jurisdiction over the department of mental retardation when the respondent has not exhausted the administrative procedures provided by statute; see General Statutes § 17a-210 (d);[2]

---

[1] In her motion to cite in the department of mental retardation, the respondent alleged that the petitioner, the department of children and families, and the department of mental retardation "have neglected and refused to coordinate their efforts in a consistent manner so as to provide a package of services to the respondent that are consistent with her needs." She did not, however, refer to the specific statutory provision imposing such an obligation on the department of mental retardation in the context of a neglect proceeding.

[2] General Statutes § 17a-210 (d) provides: "The parent, guardian, conservator or other legal representative of a person, or the person himself or herself, may request a hearing for any final determination by the department which denies such person eligibility for programs and services of the department. A request for a hearing shall be made in writing to the commissioner. Such hearing shall be conducted in accordance with the provisions of chapter 54 [the Uniform Administrative Procedure Act]." Section 17a-210 (d), in its present form, incorporates certain amendments effected by the enactment

culminating, if necessary, in an administrative appeal pursuant to General Statutes § 4-183. I do not believe that the trial court can bypass these procedures for determining the respective rights and obligations of the department of mental retardation and its clients and confer on itself jurisdiction over the department of mental retardation simply by pronouncing that that department's presence in a neglect proceeding might facilitate the goal of reunification.

Second, even in the absence of this jurisdictional bar, I do not believe that the department of mental retardation has any legal interest or obligation to the respondent in this neglect proceeding, and I would, therefore, conclude that the department of mental retardation is not a necessary, or even an appropriate, party. As a preliminary matter, I note that Practice Book § 9-18, concerning the addition of parties, does not use the phrase "necessary party," and the use of the phrase in cases applying that section has resulted in some confusion in our case law. See W. Horton & K. Knox, 1 Connecticut Practice Series: Practice Book Annotated (4th Ed. 1998) § 9-18, authors' comments, p. 311.[3] I

of Public Acts 2001, No. 01-140, § 1. The substance of those amendments is not relevant to the present appeal.

[3] "To understand [Practice Book § 9-18], one should divide the universe into four groups for the purpose of any lawsuit:

"(1) Those who must be parties to the action or no judgment can enter (cf. Federal Rule 19 [b]);

"(2) Those who ought to be (or have a right to be) parties to the action, but a judgment can enter without them (cf. Federal Rule 19 [a]);

"(3) Those who may be (but have no right to be) parties to the action (cf. Federal Rule 20);

"(4) Those who must not be parties to the action." W. Horton & K. Knox, supra, pp. 310–11.

The authors' comments to § 9-18 of the Practice Book Annotated indicate that much confusion has arisen out of the use of the word "necessary," which does not appear in Practice Book § 9-18. They also state that, as it has been used in the cases of this and other courts, the word " '[n]ecessary' is either redundant of 'indispensable' or of 'ought to be,' " and should "be purged from the lawyer's lexicon unless confusion is to reign supreme." Id., p. 312.

agree, however, that a party whose presence "is absolutely required"; *Caswell Cove Condominium Assn., Inc.* v. *Milford Partners, Inc.*, 58 Conn. App. 217, 224, 753 A.2d 361, cert. denied, 254 Conn. 922, 759 A.2d 1023 (2000); for the court to render a judgment is an indispensable party and that, as used by the parties in this case, the word "necessary" is synonymous with "indispensable."

To determine whether the department of mental retardation is a necessary party in the case, we must review the relevant statutes governing neglect proceedings. General Statutes (Rev. to 2001) § 46b-129 (j), as amended by Public Acts 2001, No. 01-142, § 6, provides in relevant part that "[t]he court shall order specific steps which the parent must take to facilitate the return of the child or youth to the custody of such parent. . . ." In the words of the respondent, these specific steps "are a road map . . . by which [the petitioner, the department of children and families] and the courts measure a parent's progress toward reunification." Other subsections of the statute provide that the court may also order the petitioner to take specific steps to return custody of the child to the parent. See General Statutes (Rev. to 2001) § 46b-129 (b) and (d). These provisions are designed to ensure that department takes "appropriate measures . . . to secure reunification of parent and child"; *In re Eden F.*, 250 Conn. 674, 696, 741 A.2d 873 (1999); so that the parent's fundamental right to family integrity is not violated. Thus, the "specific steps" provisions of § 46b-129 have two purposes: first, to instruct the parent on the specific conduct in which he or she must engage in order to satisfy the petitioner and the trial court that he or she is a fit parent and, second, to ensure that the petitioner does what it reasonably can to facilitate, rather than to impede, reunification.

The majority has pointed to no provision under the relevant statutes, however, imposing on the department of mental retardation, or, indeed, on anyone other than the respondent and the petitioner, any legal obligation to take steps to reunify the respondent and her son after the neglect finding. Nor is there any allegation that the department of mental retardation has an independent statutory obligation to the respondent, or even the ability, to take steps to ensure that she regains custody of her son.

Nevertheless, the majority concludes that the department of mental retardation is a necessary party because "it is evident that residential placement—which would solve the respondent's homelessness—as well as coordination of services, such as parenting classes, best can be provided by the department of mental retardation"; and "coordination of efforts between the petitioner and the department of mental retardation is essential to [the] goal" of reunification. This conclusion apparently derives from the majority's belief that the petitioner's suggestion that "it is up to the *respondent* to take certain initiatives is Kafkaesque." (Emphasis in original.) I disagree. Although, as the majority points out, the respondent is mentally incompetent, it is also the case that the Probate Court has appointed an attorney, Americo Carchia, as the conservator of her person.[4] In addition, the trial court appointed an attorney to represent the respondent in the neglect proceedings. In my view, the respondent, aided by Carchia and her attorney, has the sole responsibility to comply with the specific steps ordered by the trial court, including continuing to work with the department of mental retardation. As I have

[4] The majority concludes that the record does not support a finding that Carchia was the respondent's personal conservator. The respondent's attorney specifically stated at oral argument before this court, however, that Carchia was her personal conservator. I have no reason to doubt the representation of counsel on this matter.

indicated, the respondent has not pointed to any statutory obligation of the department of mental retardation to force the respondent to work with it to regain custody of her son, or, in the absence of such an obligation, to any source of the trial court's authority to issue such an order. Even if it is assumed that the exhaustion doctrine does not deprive the trial court of jurisdiction over the department of mental retardation, it would have jurisdiction only to order that department to comply with its statutory mandate. The record does not establish, however, that it was not already doing so. Because I believe that the department of mental retardation's "interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting [the department of mental retardation]"; (internal quotation marks omitted) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 225–26 n.10, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997); I would conclude that the department of mental retardation is neither a necessary nor an appropriate party.

Moreover, if, as the respondent argues, she is incapable, even with the assistance of her attorney and personal conservator, of continuing to work with the department of mental retardation in the absence of a court order to the department of mental retardation to ensure that she does so, I fail to see, as a practical matter, how the respondent could demonstrate progress in her parenting skills justifying reunification with her son. I also have questions about the temporal duration of a court order to the department of mental retardation. If the respondent and her son ultimately are reunified, will the trial court have continuing jurisdiction to issue orders to the department of mental retardation to ensure that the respondent retains custody of her son and properly cares for him? Is such an obliga-

tion within the department of mental retardation's statutory mandate? Did the legislature contemplate that the trial court would take on this supervisory role in neglect proceedings? Is such a role consistent with the court's ultimate responsibility to determine whether the respondent has shown herself to be a fit parent justifying reunification with her son? The majority does not address, much less answer, these questions.

Finally, I note that, under the majority's reasoning, any number of persons and entities—such as the department of correction, the probation department, police departments, schools, teachers, counselors, physicians, grandparents, in short, anyone whose participation could facilitate reunification of parent and child—must be treated as necessary parties to a neglect proceeding. Indeed, the majority in the present case has "strongly suggest[ed]" that, on remand, the conservator of the respondent's estate, as well as the department of mental retardation, be made a party to this action. In my view, it is the prospect of a proceeding requiring the presence of all of these parties that is Kafkaesque. I believe that the majority's decision to provide procedural protections that never were contemplated by the legislature will have the unintended effect of greatly and unnecessarily complicating and prolonging the proceedings, to the ultimate detriment of the very parties the majority seeks to protect.

I would conclude that the trial court's jurisdiction over the department of mental retardation was barred by the exhaustion doctrine. I would also conclude that, even in the absence of that jurisdictional bar, the department of mental retardation's presence was not "absolutely required in order to assure a fair and equitable trial." (Internal quotation marks omitted.) *Caswell Cove Condominium Assn., Inc.* v. *Milford Partners, Inc.*, supra, 58 Conn. App. 224. Indeed, I would conclude that the department of mental retardation is not even

a proper party to this proceeding. I also note that, although the neglect proceeding had been pending for over seven months at the time, the respondent did not file her motion to cite in until one week before trial. This court previously has recognized that it is within the discretion of the trial court to deny a request to join a party where, under all of the circumstances of the case, the request was not timely. *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 744, 699 A.2d 73 (1997). Because I would conclude that the trial court did not abuse its discretion in denying the respondent's motion to cite in the department of mental retardation as a party defendant, I respectfully dissent.